EX PARTE Curtis FOURNIER,
Applicant

Ex parte Christopher Dowden,
Applicant

NO. WR–82,102–01
NO. WR–82,103–01

Court of Criminal Appeals of Texas.

DELIVERED: October 28, 2015

Sarah V. Wood, Assistant Public Defender, Houston, TX, for Applicant.

Roe Meredith Wilson, Assistant District Attorney, Houston, TX, Lisa C. McMinn, State's Attorney, Austin, TX, for the State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which MEYERS, HERVEY, RICHARDSON, and NEWELL, JJ., join.

After being convicted and sentenced for online solicitation of a minor, Curtis Fournier and Christopher Dowden filed applications for a writ of habeas corpus. In addition to seeking relief based on this Court's opinion holding the applicable statute unconstitutionally overbroad, Applicants also seek relief under an actual innocence theory. Holding that Applicants do not present true actual innocence claims, we conclude they are not entitled to actual innocence relief. However, consistent with precedents granting relief under an unconstitutional statute theory, we set aside Applicants' judgments.

Fournier and Dowden both pleaded guilty to the offense of online solicitation of a minor under Texas Penal Code § 33.021(b)[1] and were sentenced to terms

of confinement in 2008 and 2011, respectively. In 2013, this Court in *Ex parte Lo* held § 33.021(b) to be unconstitutionally broad.[2] Although the State had a compelling interest in protecting children from sexual predators, § 33.021(b) was not narrowly drawn "because there are narrower means of achieving the State interests advanced here, at least some of which are already covered by other statutes."[3] Section 33.021(b)'s constitutional infirmity was found in the Legislature's drafting. The Court did not necessarily hold that Lo's conduct was constitutionally protected.

In their respective applications, Applicants request habeas corpus relief under *Lo* and under the theory that, because the statute is unconstitutional, they are "actually innocent." There is no disagreement among the parties that Applicants are entitled to have their judgments set aside under *Lo*.[4] We agree. The undecided issue is whether *Lo* entitles Applicants to relief under an "actual innocence" theory. We filed and set their applications to answer this question.

### Actual Innocence in the Texas Courts

Texas's actual innocence jurisprudence is heavily borrowed from federal law, but its application has been substantially modified. In *Herrera v. Collins*, by way of a federal habeas corpus petition, Herrera sought to present evidence that his brother committed the capital murder for which he

---

1. TEX. PENAL CODE § 33.021(b) (West 2012) ("A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally:

 (1) communicates in a sexually explicit manner with a minor; or

 (2) distributes sexually explicit material to a minor.").

2. 424 S.W.3d 10, 19 (Tex.Crim.App.2013).

3. *Id.* at 24.

4. *See Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim.App.2014).

was convicted.[5] He claimed that he was "actually innocent" of the capital murder and that the prohibition of cruel and unusual punishment and the Fourteenth Amendment's due process guarantee forbade his execution for the offense.[6] The United States Supreme Court addressed the use of actual innocence as a way to avoid the bar of subsequent federal habeas petitions. Although a federal petitioner may have his federal constitutional claim considered on the merits if he "supplements his constitutional claim with a colorable showing of factual innocence," "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."[7] The Court never held that factual innocence is eligible as a freestanding claim for relief.[8] For the sake of argument, the Court assumed that it did and went on to hold that Herrera could not satisfy the extraordinarily high showing required.[9]

Taking the concept of actual innocence from the United States Supreme Court's opinion in *Herrera*, this Court in *State ex rel. Holmes v. Honorable Court of Appeals for the Third District* first declared that

the execution of an innocent person would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[10] The *Holmes* Court adopted as persuasive *Herrera*'s passage in assuming a freestanding constitutional right: "We may assume for the sake of argument in deciding this case … a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."[11] *Holmes* held that only when an applicant can show that no rational trier of fact could find applicant guilty beyond a reasonable doubt in light of newly discovered evidence is an applicant entitled to relief on a factual innocence claim.[12]

[1] Two years after *Holmes*, the Supreme Court's "actual innocence" assumption[13] was firmly established into Texas habeas corpus law as a path to habeas relief. This Court's opinion in *Ex parte Elizondo* extended the potential due process violation from death-penalty cases to every case involving incarceration.[14] *Elizondo* also established an applicant's burden to obtain actual-innocence relief: "The

**5.** *Herrera v. Collins*, 506 U.S. 390, 393–94, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

**6.** *Id.* at 393, 113 S.Ct. 853.

**7.** *Id.* at 404, 113 S.Ct. 853.

**8.** *Id.* at 404–405, 113 S.Ct. 853. *See House v. Bell*, 547 U.S. 518, 554–55, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).

**9.** *Herrera*, 506 U.S. at 417–20, 113 S.Ct. 853.

**10.** *State ex rel. Holmes v. Honorable Court of Appeals for the Third District*, 885 S.W.2d 389, 397 (Tex.Crim.App.1994).

**11.** *Id.* (citing *Herrera*, 506 U.S. at 417, 113 S.Ct. 853).

**12.** *Id.* at 398; *Ex parte Franklin*, 72 S.W.3d 671, 676 (Tex.Crim.App.2002).

**13.** *See Ex parte Elizondo*, 947 S.W.2d 202, 206–207 (Tex.Crim.App.1996) ("Most justices of the Supreme Court, including Justice White, refused to hold that Herrera's claim of actual innocence was independently cognizable in a federal habeas corpus proceeding. Indeed, they specifically declined to decide that question because the facts plainly showed Herrera to be guilty of the crime under any standard. The Court simply reasoned that, even if it were unconstitutional to execute an innocent person, it would not be unconstitutional to execute Herrera since he was not innocent.").

**14.** *Id.* at 204.

petitioner must show *by clear and convincing evidence* that no reasonable juror would have convicted him in light of the new evidence."[15] Because punishment of an innocent man violates the Due Process Clause of the United States Constitution, an applicant is entitled to relief if he can "prove by clear and convincing evidence to this Court, in the exercise of its habeas corpus jurisdiction, that a jury would acquit him based on his newly discovered evidence."[16] *Elizondo*'s statement was clear: To be eligible for actual innocence relief, an applicant must "unquestionably establish" his factual innocence through newly discovered evidence.[17]

Subsequent precedent reaffirmed *Elizondo*'s fact- and conduct-centric notions of actual innocence. In *Ex parte Rich*, this Court rejected the characterization of Rich's "actual innocence" claim that an improper enhancement rendered him actually innocent as to the improper enhancement paragraph.[18] Although we granted Rich relief because his sentence was illegal, this Court stated that it is incorrect to treat Rich's claim as involving actual innocence. The Court so held because there was no evidence that Rich was innocent of the offense used to enhance his punishment, and the mischaracterization of the offense used for enhancement did not make Rich innocent of the primary offense for which he was charged.[19] Further, Rich's claims did not involve the "traditional hallmarks of actual innocence claims—

newly discovered evidence showing that the defendant is being wrongfully imprisoned for a crime that he did not commit."[20]

Our opinion in *Wilson v. State*[21] elaborated on *Rich*'s holding. In a nearly unanimous opinion written by Judge Johnson, the Court stated, "We hold that the term 'actual innocence' shall apply, in Texas state cases, only in circumstances in which an accused did not, in fact, commit the charged offense or any of the lesser-included offenses."[22] Looking back to its federal origins, the *Wilson* Court clarified that a bare actual innocence claim does not countenance "legal innocence"—the notion that, despite committing the alleged conduct, the applicant is nonetheless not guilty.[23]

The *Wilson* clarification was at the center of our recent opinion in *Ex parte Mable*, in which we denied an applicant's actual innocence claim when newly discovered forensic testing revealed that the substances forming the basis of Mable's drug possession conviction contained no illicit substances.[24] Although newly discovered evidence and facts were pleaded, we again looked to the applicant's conduct: "In this case, the applicant pleaded guilty to possession of a controlled substance. Therefore, it is possible that he intended to possess a controlled substance (which is not alone an offense) or that he attempted to possess a controlled substance (which is a lesser included offenses of posses-

15. *Id.* at 209 (emphasis in original).

16. *Id.*

17. *Id.*

18. *Ex parte Rich,* 194 S.W.3d 508, 511 (Tex. Crim.App.2006).

19. *Id.* at 515.

20. *Id.*

21. *State v. Wilson,* 324 S.W.3d 595 (Tex.Crim. App.2010).

22. *Id.* at 598.

23. *See id.* at 598–99. *But see Ex parte Sparks,* 206 S.W.3d 680, 683 (Tex.Crim.App.2006).

24. *Ex parte Mable,* 443 S.W.3d 129, 130–31 (Tex.Crim.App.2014).

sion)." [25] In his application, Mable did not contest that newly discovered evidence proved that he did not commit or intend to commit a significant portion of the charged conduct, specifically the possession element.

 "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." [26] An actual innocence claim must be accompanied by new "affirmative evidence of the applicant's innocence." [27] In the past we have evaluated the merits of actual innocence claims supported by new evidence in the form of witness recantations,[28] scientific testing like DNA,[29] and new expert testimony.[30] Applicants' requests for relief on a bare actual innocence basis do not allege any evidence establishing that had it been presented at trial, Applicants would not have been found guilty of the offense they were convicted of. Applicants do not contest that they engaged in the conduct for which they were convicted. The conduct on which the criminal prosecution was based still exists as a matter of historical fact. Instead, Applicants' contentions rest solely on a legal basis—the statute under which they were convicted is unconstitutionally broad in violation of the First Amendment. This claim is much different than pointing to new evidence supporting an argument that Applicants did not commit the conduct for which they were convicted. *Lo*, as matter of law, removed the criminal sanctions once affixed to Applicants' conduct because the statute criminalizing it was unconstitutionally drafted. *Lo* was decided on the heightened standard we use to measure a statute's language that restricts free speech. Our opinion in *Lo* is irrelevant to whether Applicants' conduct was in fact committed. We conclude that Applicants do not assert true claims of actual innocence for which relief may be granted; they are decidedly different.

By relying on the statute's overbreadth as a constitutional impediment to their convictions, Applicants' claims, if anything, more closely resemble *Schlup v. Delo* [31] claims made in federal court or claims made in Texas pursuant to Code of Criminal Procedure Article 11.07, § 4(a)(2) or Article 11.071, § 5(a)(2) [32] as a procedural vehicle to get merits review for procedur-

---

25. *Id.*

26. *Sawyer v. Whitley*, 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

27. *Ex parte Franklin*, 72 S.W.3d at 678.

28. *See, e.g., Ex parte Navarijo*, 433 S.W.3d 558, 564· (Tex.Crim.App.2014) (newly discovered recantation from sexual assault victim); *Ex parte Thompson*, 153 S.W.3d 416, 420–21 (Tex.Crim.App.2005) (granting relief on actual innocence as a result of sexual assault victim's recantation); *Ex parte Tuley*, 109 S.W.3d 388, 395–97 (Tex.Crim.App.2002) (victim recantation).

29. *See, e.g., Ex parte Holloway*, 413 S.W.3d 95, 96–97 (Tex.Crim.App.2013) (DNA testing on weapon excluded applicant).

30. *See, e.g., Ex parte Jimenez*, 364 S.W.3d 866, 874 (Tex.Crim.App.2012) (four experts' testi-mony contesting State's theory that defendant committed the conduct causing death); *Ex parte Spencer*, 337 S.W.3d 869, 878–80 (Tex. Crim.App.2011) (forensic optometrist's testimony that witnesses could not have seen what they testified to at trial).

31. 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

32. Tex.Code Crim. Proc. arts. 11.07, § 4(a)(2), 11.071, § 5(a)(2) (stating that a court may not consider a subsequent writ application unless the application contains specific facts establishing that "by a preponderance of the evidence, but for a violation of the United States Constitution no rational ·juror could have found the applicant guilty beyond a reasonable doubt.").

ally barred claims. But Applicants' claims are not found in subsequent applications; these are Applicants' initial writs.

In *Schlup*, the United States Supreme Court held that Schlup could assert a procedural form of "actual innocence" to overcome the procedural bar against raising subsequent habeas corpus claims in federal court.[33] The Court made clear that Schlup's "constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel, ... and the withholding of evidence by the prosecution, ... denied him the full panoply of protections afforded to criminal defendants by the Constitution." [34] Schlup's claim of actual innocence, the Court noted, was offered only to bring him within the "narrow class of cases ... implicating a fundamental miscarriage of justice," a long-standing exception to the federal procedural bar to subsequent habeas claims.[35] The Court contrasted Schlup's actual innocence claim from Herrera's: "[Herrera] advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the Eighth Amendment." [36]

Of course, *Schlup*'s "actual innocence" gateway for review of federally barred claims serves only as a historical footnote to Texas's abuse-of-the-writ statutes found in Article 11.07, § 4(a)(2) and Article 11.071, § 5(a)(2), as those statutes appear to have been patterned after it.[37] *Schlup* does not apply in Texas,[38] and coincidentally, like *Herrera*, does not provide an avenue for relief in federal courts either.[39] Because Applicants' claims are made in initial applications, we are not faced with procedurally barred claims, nor the obligation to measure them against our subsequent-application statutes. Applicants need not overcome any procedural hurdles, and their *Lo* claims may be addressed outright.

Applicants refer us to precedents holding that federal petitioners are "actually innocent" when the statute under which they were convicted is declared unconstitutional. Because they all deal with actual innocence as a way to avoid procedural default under federal law, we find them inapplicable. In *Bousley v. United States*, petitioner Bousley challenged his conviction of using a firearm in violation of 18 U.S.C. § 924(c)(1) claiming that his plea was involuntary because he was misinformed of the offense's elements.[40] Bousley's argument relied on the Supreme Court's interpretation of the word "use" in the statute five years after his conviction.[41]

33. *Schlup*, 513 U.S. at 326–29, 115 S.Ct. 851

34. *Id.* at 314, 115 S.Ct. 851 (in-text citations omitted).

35. *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).

36. *Id.*

37. *See Ex parte Blue*, 230 S.W.3d 151, 158, 160 (Tex.Crim.App.2007).

38. *Ex parte Villegas*, 415 S.W.3d 885, 887–88 (Tex.Crim.App.2013) (Price, J., concurring).

39. *See, e.g., House*, 547 U.S. at 555, 126 S.Ct. 2064; *In re Swearingen*, 556 F.3d 344, 348 (5th Cir.2009); *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir.2004); *Johnson v. Bett*, 349 F.3d 1030, 1038 (7th Cir.2003); *Rouse v. Lee*, 339 F.3d 238, 255 (4th Cir.2003); *David v. Hall*, 318 F.3d 343, 347–48 (1st Cir.2003); *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir.2002); *LaFevers v. Gibson*, 238 F.3d 1263, 1265 n. 4 (10th Cir.2001).

40. *Bousley v. United States*, 523 U.S. 614, 617–18, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

41. *Id.* at 616, 118 S.Ct. 1604. *See Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (holding that "use" requires the Government to show "active employment of the firearm.").

The Court found Bousley's claim procedurally defaulted, and held that if Bousley could establish "that the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent,'" only then could his claim be entertained.[42] The Court did not, as Applicants seems to suggest, find that Bousley was actually innocent under *Schlup* or that his plea was invalid; the Court remanded to permit Bousley the opportunity to make that showing.[43] *Bousley* stands for the unremarkable principle that actual innocence, if proved, can serve as a claim to overcome the federal courts' bar on successive habeas petitions.

Applicants' citations to other federal precedent are equally unpersuasive. Applicants rely heavily on *Alexander v. Johnson*, a magistrate's opinion holding that because petitioner's parole was revoked on the grounds of a facially unconstitutional statute, he "is by necessity actually innocent of a violation of law."[44] In so holding, the judge purportedly applied Fifth Circuit and Supreme Court precedent. In granting relief, the magistrate's opinion made no mention of a bare actual innocence claim and did not grant relief on that basis. The inclusion of the term "actually innocent" is found in its discussion of whether equitable tolling permitted the applicant to file his habeas petition outside the federal statute's one-year statute of limitations.[45] Like in *Bousley*, the magistrate's opinion, and the authority it relies upon, is only relevant to successive habeas petitions in federal court.

In *Reyes–Requena v. United States*, the Fifth Circuit also used the term actual innocence, but did so in the context of whether Reyes–Requena's claim properly fell within 18 U.S.C. § 2255(h)'s "savings clause."[46] *Reyes–Requena* spoke only in terms of how a particular claim may be pursued after an initial habeas petition and did not grant habeas relief. Instead, the court remanded the matter to the district court to determine the merits of Reyes–Requena's claim.[47] Citing to *Hiett v. United States*[48] and *Davis v. United States*[49] also does not help Applicants' request for actual innocence relief. *Hiett* involved a direct appeal of a federal conviction under a statute that criminalized using the mail to solicit business in connection with securing a divorce in a foreign country.[50] The Fifth Circuit found the statute unconstitutionally vague and reversed the conviction.[51] *Davis* involved a federal habeas petition, but "[t]he sole issue before the Court ... [was] the propriety of the Court of Appeals' judgment that a change in the law of that Circuit after the petitioner's

---

**42.** *Bousley,* 523 U.S. at 623, 118 S.Ct. 1604.

**43.** *Id.* at 623–24, 118 S.Ct. 1604.

**44.** *Alexander v. Johnson,* 217 F.Supp.2d 780, 792 (S.D.Tex.2001).

**45.** *Id.* at 791–92.

**46.** *Reyes–Requena v. United States,* 243 F.3d 893, 904–905 (5th Cir.2001). *See* 18 U.S.C. § 2255(h) (2000) (permitting second or successive motions only if the motion contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.").

**47.** *Reyes–Requena,* 243 F.3d at 904–906.

**48.** 415 F.2d 664, 666 (5th Cir.1969).

**49.** 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

**50.** *Hiett,* 415 F.2d at 665.

**51.** *Id.* at 673.

conviction may not be successfully asserted by him in a § 2255 proceeding."[52] While it expressed no view on the merits of the claim, the Court held that Davis could proceed under § 2255 with his claim that his underlying conduct was not criminal because the administrative order that criminalized his conduct was unconstitutional.[53] This holding is inapplicable to Applicants' actual innocence claims.

### Relief under *Ex parte Lo*

■ Although we find against Applicants in their claims for actual innocence relief, Applicants are entitled to relief under *Lo* and our subsequent decision in *Ex parte Chance*.[54] In a short *per curiam* opinion, we granted Chance relief based on our judgment in *Lo* despite Chance's failure to contest the statute's constitutionality at trial or on appeal.[55] Consistent with *Chance*, we set aside Fournier's and Dowden's judgments of conviction in Cause Numbers 1151921 and 1300886, respectively, and remand those causes to the respective trial courts to dismiss the indictments.

ALCALA, J., filed a concurring opinion.

YEARY, J, filed a dissenting opinion, in which KELLER, P.J., joined.

JOHNSON, J., concurred.

### CONCURRING OPINION

ALCALA, J., filed a concurring opinion.

I concur in this Court's judgment granting habeas corpus relief to Curtis Fournier and Christopher Dowden, applicants, under an unconstitutional-statute theory and denying relief under an actual-innocence theory. *See Ex parte Lo*, 424 S.W.3d 10, 23–24 (Tex.Crim.App.2013) (holding that portion of online-solicitation-of-a-minor statute was unconstitutionally overbroad, and reversing trial court's denial of pretrial application for writ of habeas corpus on that basis).[1] Although I agree with

---

**52.** *Davis*, 417 U.S. at 341, 94 S.Ct. 2298 (1974).

**53.** *Id.* at 346–47, 94 S.Ct. 2298 ("If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255.").

**54.** 439 S.W.3d 918 (Tex.Crim.App.2014). *Accord Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim.App.1988) (holding that an unconstitutional statute is void from its inception).

**55.** *See generally Chance*, 439 S.W.3d at 918.

**1.** Formerly, online solicitation of a minor under Texas Penal Code Section 33.021 described three ways that the offense could be committed—by communicating in a sexually explicit manner, by distributing sexually explicit material, or by soliciting a minor to meet—but only the third way remained viable after this Court held that Subsection (b) was unconstitutionally overbroad. *See* TEX. PENAL CODE § 33.021(b) (West 2010). The statute stated:

(b) A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text·message or other electronic message service or system, or through a commercial online service, intentionally:

(1) communicates in a sexually explicit manner with a minor; or

(2) distributes sexually explicit material to a minor.

(c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

*Id.* Since this Court's 2013 opinion in *Lo*, the Legislature has amended Section 33.021(b) to

most of the analysis in the majority opinion, I reach my ultimate conclusions through a slightly different approach. I also write separately to explain why I agree with this Court's decision to grant relief retroactively to these and other applicants on the basis of the unconstitutional-statute theory.

## I. Actual Innocence

Habeas corpus relief from a criminal conviction based on an actual-innocence claim is the same as habeas corpus relief based on an unconstitutional-statute claim: In each case, after relief is granted, the applicant's judgment and sentence are vacated, and he is returned to the convicting court to answer the charges against him. If they were simply interested in obtaining relief from their criminal convictions, these applicants would have already obtained that relief on the basis that the statute under which they were convicted has been declared unconstitutional. *See, e.g., Ex parte Chance*, 439 S.W.3d 918, 918 (Tex. Crim.App.2014) (per curiam). The reality is that these applicants want a declaration from this Court of their "actual innocence" so that they may pursue additional benefits that may arise from that declaration.

One of the primary benefits of a declaration of actual innocence by this Court is that the Texas Comptroller will pay large sums of money as compensation for the period of time that the person was wrongfully incarcerated. *In re Allen*, 366 S.W.3d 696, 701 (Tex.2012). Under a civil statute known as the Tim Cole Act, anyone who has been declared actually innocent receives substantial financial compensation for his wrongful incarceration. Tex. Civ.

Prac. & Rem.Code § 103.001(a). The Texas Supreme Court has held that the "Legislature intended the legal term of art, 'actual innocence,' to include both *Herrera* and *Schlup* claims," and it instructed the Comptroller to compensate anyone found actually innocent under either the *Herrera* or *Schlup* standards. *Allen*, 366 S.W.3d at 701, 707–09. Because of the interrelationship between the civil compensation for wrongful incarceration and the criminal declaration of actual innocence, it is necessary for this Court to apply the term "actual innocence" strictly and consistently as a term of art.

Applying the meaning of actual innocence as a strict term of art, I conclude that these applicants are not actually innocent based on the facts in their cases. They did commit acts that, at the time those acts were committed, were considered criminal under the laws of this State. There is no new evidence that changes the facts. Here, there is only a change in the law. And a change in the law alone is inadequate to meet the meaning of actual innocence as a strict term of art, which requires evidence that unquestionably establishes an applicant's factual innocence through newly discovered evidence. *See Ex parte Elizondo*, 947 S.W.2d 202, 206–07 (Tex.Crim.App.1996).

I recognize that one might reasonably argue that this Court's holding in *Lo* constitutes new evidence that unquestionably establishes an applicant's innocence. *See Chance*, 439 S.W.3d at 919–21 (Cochran, J., concurring). After all, but for the existence of the unconstitutional statute, there are no facts that could support the appli-

---

now state that a person commits the offense of online solicitation of a minor if he acts "with the intent to commit" one of the sexual offenses listed in Code of Criminal Procedure Article 62.001(5)(A), (B), or (K). *See* Tex. Penal Code § 33.021(b) (West 2016). Of course,

because this Court's decision in *Lo* did not affect the validity of Subsection (c), even after the *Lo* decision, a defendant may be convicted of online solicitation of a minor if he solicits a minor to meet him over an electronic or online service.

cants' convictions. In her concurring opinion in *Ex parte Chance*, Judge Cochran observed that "most federal courts, including the Fifth Circuit, hold that one who has been convicted under a penal statute that is later found unconstitutional is 'actually innocent' of any crime because 'the core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law.'" *Id.* at 920 (quoting *Reyes–Requena v. United States*, 243 F.3d 893, 903 (5th Cir.2001)). She continued,

> [A]pplicant is requesting relief for a conviction of a non-crime. He is actually innocent of any criminal wrongdoing because the penal statute under which he was convicted has already been declared nonexistent. He may take advantage of the "void ab initio" status today, yesterday, tomorrow, or even ten years from now. Anyone who has been convicted under the now void provisions of Section 32.021(b) is "innocent" and may obtain an acquittal, whether it is in the trial court, on direct appeal, or in a habeas proceeding.

*Id.* at 922. I joined Judge's Cochran's concurring opinion in *Chance*, and I continue to agree with its logical premise that a defendant, legally speaking, cannot be guilty of an offense when he has been convicted under a statute that has been declared void. He is indisputably entitled to relief from his invalid conviction. That type of "legal innocence," however, is distinct from the type of "factual innocence" that is required to make a showing of actual innocence under the standard set forth in *Elizondo*. *See* 947 S.W.2d at 209.[2]

Thus, I ultimately agree with this Court's majority opinion that applicants' claims do not meet the definition for "actual innocence" as a strict term of art that narrowly permits consideration only of changes in the actual facts—the who, what, when, where, and how type of factual evidence that establishes an offense—rather than changes in the applicable law. For these reasons, I concur in this Court's ultimate judgment that applicants' claims for relief on the basis of actual innocence must be denied.

## II. Retroactivity of *Lo*

I agree with this Court's majority opinion that *Lo* should be applied retroactively to defendants who have been convicted of online solicitation of a minor under Penal Code Section 33.021(b). *See Lo*, 424 S.W.3d at 23–24; TEX. PENAL CODE § 33.021(b) (West 2010). Although it is well established that the announcement of a new rule applies to the litigants in the case in which it is announced and to similarly situated defendants with cases pending on direct appeal, a new rule usually does not apply retroactively on collateral review of cases that are considered final. *See Linkletter v. Walker*, 381 U.S. 618, 622, 627, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Taylor v. State*, 10 S.W.3d 673, 677–80 (Tex.Crim.App.2000). I conclude, however, that, as explained below, applicants' situation falls within the exception to the usual rule.

The Supreme Court articulated principles by which to make the retroactivity determination in *Teague v. Lane*, 489 U.S.

---

**2.** *See, e.g., Poindexter v. Nash*, 333 F.3d 372, 380 (2d Cir.2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and stating that a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used ... in habeas jurisprudence generally"); *Rodriguez v. Johnson*, 104 F.3d

694, 697 (5th Cir.1997) ("The term 'actual innocence' means *factual*, as opposed to *legal*, innocence—'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence ... means that the person did not commit the crime.") (citations omitted).

288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Although this Court is not bound to follow *Teague* in this instance, we generally adhere to its principles. *See Danforth v. Minnesota*, 552 U.S. 264, 280–81, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (explaining that *Teague* does not constrain "a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions"); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App.2013) ("This Court follows *Teague* as a general matter of state habeas practice[.]"). Generally, under *Teague*, a new rule should not be applied on collateral review because the purpose of the writ of habeas corpus is best served by applying "the constitutional standards that prevailed at the time the original proceedings took place." *Teague*, 489 U.S. at 306, 109 S.Ct. 1060 (quoting *Desist v. United States*, 394 U.S. 244, 262–63, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)). This general rule, however, has two exceptions, the first substantive and the second procedural. First, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. *Id.* at 311, 109 S.Ct. 1060. Second, a new rule should be applied retroactively if it constitutes a watershed rule of criminal procedure, in the sense that it implicates the fundamental fairness of a trial. *Id.* at 311–13, 109 S.Ct. 1060. Fifteen years after *Teague* was decided, the Supreme Court clarified that, with respect to the first *Teague* exception, "[n]ew *substantive* rules generally apply retroactively." *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (emphasis in original). In *Schriro v. Summerlin*, the Supreme Court stated, "This includes decisions that narrow the scope of a criminal statute by interpreting its terms ... as well as con-stitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351–52, 124 S.Ct. 2519 (citations omitted). The *Summerlin* Court observed that substantive rules should apply retroactively because they carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose on him. *Id.*

Applying the *Teague* analysis to the present situation, it is clear that the rule announced in *Ex parte Lo* should be applied retroactively. The new rule is that Texas Penal Code § 33.021(b) is unconstitutionally overbroad and cannot be enforced. *Lo*, 424 S.W.3d at 23–24. According to *Summerlin*, a substantive rule is presumed to be retroactively applicable, and "[t]his includes decisions that narrow the scope of a criminal statute by interpreting its terms." *Summerlin*, 542 U.S. at 351, 124 S.Ct. 2519. When this Court held that Section 33.021(b) was unconstitutional, that decision necessarily narrowed the statute's scope. Furthermore, the *Summerlin* Court warned that rules falling into the first *Teague* exception should be applied retroactively because there runs a "significant risk that a defendant will be convicted of an act that the law does not hold criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352, 124 S.Ct. 2519. Here, the applicants are convicted of violating Section 33.021(b), which this Court has held encompasses acts that the law does not make criminal. There being no reason to deviate from the principle that new substantive rules are applied retroactively, and given that there is ample reason to adhere to it, it is appropriate to give applicants the benefit of the *Lo* rule on collateral review.

It has been suggested that we apply *Lo* on collateral attack selectively by requiring

each habeas applicant to make an evidentiary showing that the statute operated unconstitutionally as applied to him. The reasoning is that the statute is overbroad rather than vague, so that a substantial portion of its applications are legitimate. Even if it has logical appeal, this suggestion is unworkable. A statute that is unconstitutional is void ab initio, or void from its inception, and this principle applies regardless of whether the statute is void for vagueness or overbreadth. *Smith v. State,* 463 S.W.3d 890, 896 (Tex.Crim.App.2015). It is as if it had never been passed, and it has the legal force of a blank piece of paper. *Reyes v. State,* 753 S.W.2d 382, 383 (Tex.Crim.App.1988). I recognize that the defendants convicted under the now-invalidated portion of the online-solicitation-of-a-minor statute are likely not without fault. But, given that the statute under which they were convicted has been declared a legal nullity, there exists no valid authority under which they may continue to be punished and, therefore, their convictions cannot lawfully be enforced against them.

For these reasons, I agree with this Court's conclusion that the rule of *Lo* must be given retroactive effect to these applicants' convictions.

## III. Conclusion

I concur in this Court's judgment denying habeas corpus relief on the basis of actual innocence and granting applicants relief on the basis of the unconstitutionality of the online-solicitation-of-a-minor statute.

## DISSENTING OPINION

YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.

With respect to the issue upon which we filed and set these post-conviction applications for writ of habeas corpus, brought under the auspices of Article 11.07 of the Texas Code of Criminal Procedure, I agree with the majority opinion today. For the reasons stated in that opinion, Applicants are not entitled to relief on the basis of a claim of "actual innocence."

I nevertheless dissent to the Court's ultimate disposition of these cases. On the strength of *Ex parte Chance,* 439 S.W.3d 918 (Tex.Crim.App.2014), the Court grants Applicants relief based upon its earlier declaration, in *Ex parte Lo,* that the statute upon which their convictions were based was unconstitutional on its face, as overbroad. 424 S.W.3d 10 (Tex.Crim.App. 2013). But the Court's *per curiam* opinion in *Chance* did not explain why the holding in *Lo* should apply to nullify convictions that were already final by the time *Lo* was decided. Because I would hesitate to give *Lo* retroactive effect, I dissent.

## The General Rule

Ordinarily, to establish that a legislative enactment is unconstitutional on its face, a litigant "must establish that no set of circumstances exists under which the [challenged statute] would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). With that concept as a starting point, Texas has long recognized "the general rule" that an unconstitutional statute "is void from its inception[.]" *Reyes v. State,* 753 S.W.2d 382, 383 (Tex.Crim.App.1988). When an appellate court has ruled a statute facially unconstitutional, the court has "not annul[ed] the statute, for it was already lifeless. It had been fatally smitten by the Constitution at its birth." *Id.* (citing *Ex parte Bockhorn,* 62 Tex.Crim. 651, 138 S.W. 706, 707 (Tex.Crim.App.1911), which in turn quoted *Boales v. Ferguson,* 55 Neb. 565, 76 N.W. 18, 19 (1898)). *See also* 12B Tex.Jur.3d, Const. Law, § 57 (2012), at 97–

99; 16A Am.Jur., Const. Law, § 195 (2d ed.2009), at. 61–64. Stated another way:

> An act that has been declared unconstitutional is, in legal contemplation, as inoperative as though it had never been passed or written, and it is regarded as invalid, or void, from the date of enactment (not only from the date on which it was judicially declared unconstitutional) and at all times thereafter.

16 Corpus Juris Secundum, Const. Law § 265 (2015), at 333.[1]

Given this general rule—that an unconstitutional statute is inoperable "from its inception"—it may seem redundant or even pointless to engage in an analysis of retroactivity of the judicial decision that declared the statute to be unconstitutional. After all, it was not the judicial decision that nullified the statute; the statute was stillborn. Any analysis of retroactivity would surely result in a conclusion that the judicial opinion recognizing the facial unconstitutionality of a penal statute should be applied retroactively. Thus, any time a penal statute is declared facially unconstitutional—at least in the usual sense that it is invalid under some constitutional principle *in all of its applications*—it would make sense to hold the opinion declaring the facial unconstitutionality of the penal provision to apply to any and every individual ever convicted under that provision, in the future and in the past.

### Ex parte Chance

In *Ex parte Chance*, this Court apparently followed the general rule and gave retroactive application to our decision in *Ex parte Lo.* See 439 S.W.3d at 921

(Cochran, J., concurring) ("We follow this 'void ab initio' concept."). But in that case, as in this one, this Court failed to entertain or examine the question of whether an appellate decision declaring a penal statute to be unconstitutional under the First Amendment's substantial overbreadth doctrine ought to be given fully retroactive effect. To be fair, it is true that no litigant has as yet attempted to raise that question before us.

### The First Amendment Substantial Overbreadth Doctrine

I believe it important to recognize that the ordinary rule—requiring that a litigant challenging a legislative enactment as unconstitutional on its face "must establish that no set of circumstances exists under which the [challenged statute] would be valid[,]" *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095—does not apply to First Amendment overbreadth challenges. A penal provision does not have to be unconstitutional in all of its applications in order for an appellate court to declare it facially unconstitutional under the First Amendment's overbreadth doctrine. Indeed, that criminal defendant's own First Amendment rights may remain unscathed by the indictment and prosecution against him, and yet he may still have standing to obtain a ruling that the penal statute under which he is charged is facially unconstitutional "if it prohibits a substantial amount of protected speech judged in relation to [its] plainly legitimate sweep." *Ex. parte Lo,* 424 S.W.3d at 18 (quoting *Virginia v. Hicks,* 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003)). As Texas Jurispru-

---

1. "This rule, however, is not without exception." *Lapasnick v. State,* 784 S.W.2d 366, 368 (Tex.Crim.App.1990). "[C]ourts may make exceptions to the general rule where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it." 16A Am.Jur., Const. Law, § 196 (2d ed.2009), at 64. *See also* 12B Tex.Jur.3d, Const. Law, § 57 (2012), at 98 (citing *Lapasnick*); 16 Corpus Juris Secundum, Const. Law, § 265 (2015), at 334.

dence 3d describes this aspect of the so-called "substantial overbreadth doctrine":

> Ordinarily, a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those directly before the court. In the area of First Amendment freedoms, however, an overly broad statute may serve to chill the exercise of protected rights, and an attack on such a statute will be allowed without requiring that the person making the attack demonstrate that his or her specific conduct is protected. Thus, as long as a case or controversy exists, a litigant whose own activities are unprotected may challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court. In other words, even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge the statute on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of others persons not before the court. Litigants are permitted to challenge a statute on First Amendment grounds not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's existence may cause others not before the court to refrain from constitutionally protected speech or expression.

12B Tex.Jur.3rd, Const. Law, § 40 (2012), at 69–70. *See also* 16A Am.Jur., Const. Law, §§ 428–30 (2d ed.2009), at 369–377; 16B Corpus Juris Secundum, Const. Law, § 962 (2015), at 90–93.

### Is a Substantially Overbroad Statute "Void Ab Initio"?

But is an overbroad statute—facially unconstitutional only in the vicarious sense that it tends to "chill" the First Amend-ment rights of others not involved in the litigation—"void ab initio" in the same way that a statute that is unconstitutional in *all* of its applications may be said to be "void ab initio"? As already explained, the burden of proof in a First Amendment overbreath action is less than in an ordinary facial challenge to the constitutionality of a statute. When that burden has been met, a judicial finding of facial unconstitutionality for First Amendment overbreadth also constitutes less than a finding that there is no conceivable application of the law consistent with the requirements of the Constitution. Under these circumstances, it is beyond dispute that a particular defendant who was convicted for a violation of the statute, and whose conviction became final before the penal statute was declared unconstitutional merely for overbreadth, may very well have committed conduct that fell within the "plainly legitimate sweep" of the overbroad statute. The Court has nevertheless determined, under our existing precedent, that pre-existing, final, and presumptively valid convictions under the statute must also be automatically and uncritically nullified. But I am not persuaded that we must go that far. In fact, I believe that to do so constitutes an unnecessary and unacceptable windfall to those defendants.

To a certain extent, of course, the First Amendment overbreadth doctrine inevitably creates windfalls. Once an appellate court has declared a penal provision unconstitutionally overbroad, no individual may be prosecuted *under that provision* from that point on, even if the individual's conduct falls well within the statute's plainly legitimate sweep. In fact, individuals will be free to commit that constitutionally actionable conduct with impunity until such time as the Legislature may proscribe it once again in a constitutionally

tolerable statute.[2] This prospective windfall is justified by the fact that, before it may be declared facially unconstitutional, the penal statute must be said to reach protected conduct at a rate far exceeding its "plainly legitimate sweep." The admittedly "strong medicine" of striking down a statute that has some constitutional applications, *Ex parte Thompson*, 442 S.W.3d 325, 349 (Tex.Crim.App.2014), is thus necessary to alleviate its substantial "chilling" effect on constitutionally protected conduct. The question is, at what point is the medicine too strong?

A defendant finally convicted pursuant to a statute that is found only to be constitutionally overbroad is unlike a defendant who was convicted pursuant to a statute that has no conceivable constitutional applications. The former defendant may well have committed a constitutionally actionable offense under a statute that did not even remotely impinge upon *his* First Amendment rights. Consequently, retroactively declaring his conviction void ab initio would seem arguably to be neither necessary nor just. Declaring the statute invalid prospectively and enjoining the future enforcement of the law, it seems to me, might be more than sufficient to satisfy the interests and goals of the over-

breadth doctrine—to ensure that the continued enforcement of the overbroad law will not chill the constitutionally protected expression of others.

There seems to be little reason to doubt that the prospective application of a judicial decision declaring a penal provision to be overbroad is strong enough.[3] The statute has been struck down and may not be used in the future to prosecute even those offenders whose conduct was not constitutionally protected. This should suffice to enable the courts to alert the Legislature of the need to fine-tune the statute without seeming unduly critical of our co-equal branch—or, worse, punitive.

Whatever incremental value *retroactive* application may have to alleviate the chilling effect of the overbroad statute does not seem to me to be worth the societal cost of exonerating any number of offenders whose conduct was legitimately—if inartfully—proscribed. The windfall that inevitably flows from judicially declaring an overbroad penal provision to be facially unconstitutional need not extend so far as to apply retroactively to grant habeas corpus relief to applicants who have suffered no First Amendment infraction themselves.[4]

2. This, of course, assumes that the same conduct is not also subject to prosecution pursuant to some other valid statute.

3. According to the United States Supreme Court, a defendant whose conviction is already final at the time of the announcement of a new rule may not ordinarily avail himself of the newly announced rule. *See Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). This rule might also be appropriately applied in cases such as these, when this Court decides that a law is overbroad in violation of the First Amendment. Of course, even if we were to apply the new rule doctrine, there may also be some number of other cases, also pending at different stages of litigation at the time of the Court's determination, that might need to be given the benefit

of the new rule as well. *See e.g., Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (explaining, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). However, the full extent to which the overbreadth decision would need to be extended to other cases in varying stages of litigation and not yet final does not need to be decided today.

4. I am aware of the various opinions in *Massachusetts v. Oakes*, 491 U.S. 576, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989). In that case, the United States Supreme Court granted cer-

This is an argument that neither the Court nor Judge Cochran in her concurring opinion addressed before granting relief in *Ex parte Chance*. The Court seems instead to have uncritically applied the general rule that a facially unconstitutional statute is "void ab initio" without pausing to ask whether the general rule ought to apply in the context of the First Amendment substantial overbreadth doctrine. Indeed, without missing a step, we persist

tiorari solely to review whether a particular state statute was substantially overbroad. But the Court was ultimately unable to reach agreement on that issue. Instead, a plurality of the Court simply announced that it would not address the question after all because the Massachusetts Legislature had subsequently amended the statute in such a way as to cure any potential overbreadth. The plurality observed:

Overbreadth is a judicially created doctrine designed to prevent the chilling of protected expression. An overbroad statute is not void ab initio, but rather voidable, subject to invalidation notwithstanding the defendant's unprotected conduct out of solicitude to the First Amendment rights of parties not before the court. Because the special concern that animates the overbreadth doctrine is no longer present after the amendment or repeal of the challenged statute, we need not extend the benefits of the doctrine to a defendant whose conduct is not protected.

*Id.* at 584. Thus, the plurality in *Oakes* would take the occasion of the amendment of an overbroad statute as a justification for failing ever to pass on the question of its facial constitutionality.

Five justices disagreed with this view, however, joining that part of Justice Scalia's opinion that dissented to the plurality's failure to reach the merits of the overbreadth question. In fact, that was the only facet of the case that garnered a majority. Because Justice Scalia and one other justice believed that the pre-amendment statute was *not* unconstitutionally overbroad, they provided the necessary votes to remand the case for determination of Oakes's as-applied challenge to the pre-amendment statute.

Justice Scalia's rejection of the plurality's view that an overbreadth analysis should not be undertaken at all once a statute has been amended does not apply with nearly the same

in doing so in these cases as well. I believe the Court should take the opportunity now to order briefing on the issue. At least then, we could give the matter its due consideration. Because we do not, I cannot join the Court's opinion.

## Conclusion

Once a statute has been judicially recognized as unconstitutionally overbroad, that

force to the question presented in this case: whether a decision declaring a statute to be overbroad should be applied retroactively. Justice Scalia argues:

If the promulgation of overbroad laws was cost free, as the plurality's new doctrine would make it—that is, if *no* conviction of constitutionally proscribable conduct would be lost, so long as the offending statute was narrowed before the final appeal—then legislatures would have significantly reduced incentive to stay within constitutional bounds in the first place. When one takes account of those overbroad statutes that are never challenged, and of the time that elapses before the ones that are challenged are amended to come within constitutional bounds, a substantial amount of legitimate speech would be "chilled" as a consequence of the rule the plurality would adopt.

The same criticism cannot fairly be leveled against the argument that retroactive application of the overbreadth doctrine is unnecessary. In *Oakes*, the plurality regarded the overbreadth question as moot and refused to reach it *at all*. By contrast, this Court has in fact declared the statute at issue in *Lo* to be facially unconstitutional on the basis that it is substantially overbroad. Such a statute can have no legitimate prospective application, and the judicial declaration that it is invalid may well be retroactively applied to any case still pending on direct appeal. It can no longer operate to chill legitimate speech, and its removal from the books for any future purpose should serve as incentive enough for the Legislature to take better care not to draft statutes that are insufficiently solicitous of First Amendment rights. The incremental value of also applying it retroactively to unravel final convictions for constitutionally *un* protected conduct seems to me not worth the candle.

new rule should be given prospective application. I would not be averse, in cases where it is appropriate, to retroactively grant post-conviction habeas corpus relief as well—but we should consider whether we should limit post-conviction relief to those applicants who can establish that their conduct did not fall within the plainly legitimate sweep of the overbroad statute. I would order briefing on this issue. Applicants today have made no showing that the statute that we struck down in *Lo* was unconstitutional as it applied to their conduct. Without such a showing, I am reluctant to extend to them the benefit of a retroactive application of *Ex parte Lo*. Because the Court persists in doing so—in these, and many other cases—without ever considering or addressing, much less explaining, why it regards retroactive application to be necessary, and because the Court has not requested briefing on this issue from the parties, I respectfully dissent.