

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

NO. WR-96,658-01

EX PARTE ERIC TODD WILLIAMS, Applicant

ON APPLICATION FOR A WRIT OF HABEAS CORPUS
CAUSE NO. 2012CR10649-W1 IN THE 379TH DISTRICT COURT
BEXAR COUNTY

PARKER, J., filed a concurring and dissenting opinion in which FINLEY, J., joined.

CONCURRING AND DISSENTING OPINION

*Ex parte Lo* held that the statute Applicant was convicted under was facially unconstitutional because it was overbroad in violation of the First Amendment.[1] And this Court has long held that a statute that has been held facially unconstitutional is "void from its inception . . . as if it had never been."[2] It follows from these two holdings that any person convicted under the statute at issue here

---

[1] 424 S.W.3d 10 (Tex. Crim. App. 2013).

[2] *Ex parte Beck*, 541 S.W.3d 846, 855 & n. 10 (Tex. Crim. App. 2017) (citing cases); *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015); *Ex parte Bockhorn*, 62 Tex. Crim. 651, 652 (1911).

is entitled to relief on postconviction habeas. Not surprisingly, this Court has held exactly that.[3]

No one disputes that the statute Applicant was convicted under was held facially unconstitutional in *Lo*. We cannot and should not deny relief without overruling or modifying one of the two propositions that, when combined, requires that relief be granted.

My current thinking leads me to want to overrule *Lo*, but a majority of the Court declines to file and set this case to reconsider that decision. I dissent from that declination, because I would file and set the case to reconsider *Lo*. But longstanding precedent holds that a statute that has been held facially unconstitutional is void, and I agree with that precedent. Consequently, in my view, so long as *Lo* remains binding precedent, its *effect* of rendering the statute void remains, and Applicant is entitled to relief. Moreover, if I voted to deny relief and that vote resulted in this Court denying relief with a plurality decision, such action would create a walking contradiction—denying relief when majorities of the Court (albeit shifting ones) continue to adhere to legal propositions that, when combined, require that relief be granted. Aside from being illogical, denying relief in this manner, when such relief has been routinely granted in the past, would undermine confidence in this Court and the rule of law. Consequently, though I dissent from the Court's refusal to file and set, having lost that battle, I concur in its decision to grant relief.

## I.

Although I disagree with Judge Yeary on the effect of an overbreadth holding,[4] I agree with him that *Lo* was wrongly decided. To the arguments he makes, I would add that our decision in *State*

---

[3] *Beck*, *supra* at 855; *Ex parte Fournier*, 473 S.W.3d 789, 796 (Tex. Crim. App. 2015); *Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014); *see also id.* at 918-22 (Cochran, J., concurring).

[4] *See infra* at part II.

*v. Johnson*[5] further undermines *Lo*'s holding. Decided almost two years after *Lo, Johnson* presciently anticipated *United States v. Hansen*[6] by explicitly saying that "the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'"[7] And while *Johnson* did not explicitly say that a "lopsided ratio" is required to find a statute unconstitutional for overbreadth, the decision actually found such a lopsided ratio with respect to the flag-desecration statute it invalidated.[8] *Johnson* explained how, in the abstract, most conduct that fell within the Texas flag-desecration statute that would be prosecuted would constitute protected expression.[9] And surveying practically every published decision in the nation on flag-desecration offenses, *Johnson* showed that the overwhelming majority of them involved protected expression.[10]

By contrast, *Lo* did not conduct this sort of analysis. As Judge Yeary points out, *Lo* focused on fanciful hypotheticals and did not offer any examples of actual prosecutions of protected conduct under the Texas statute or even any similar statute.[11] In fact, compared to this Court's other

---

[5]  475 S.W.3d 860 (Tex. Crim. App. 2015).

[6]  599 U.S. 762 (2023).

[7]  *Johnson*, 475 S.W.3d at 865 & nn.18, 19 (quoting, among other opinions, Justice Alito's dissent in *United States v. Stevens*, 559 U.S. 460, 485 (2010) (Alito, J., dissenting)). *Compare Hansen*, *supra* at 770 ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep.").

[8]  *See Johnson*, *supra* at 875-76, 878-79. *Compare Hansen*, *supra* ("In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case.").

[9]  *Johnson*, *supra* at 875-76.

[10]  *Id.* at 878-79 & nn.108-10.

[11]  *See Lo*, 424 S.W.3d at *passim*. In *Ex parte Thompson*, also decided after *Lo*, the Court questioned the need to conduct an overbreadth analysis but did so in an abundance of caution. 442 S.W.3d 325, 349 (Tex. Crim. App. 2014). The Court did not need to conduct an overbreadth

cases—*Johnson*, *Thompson*, and *Perry*—*Lo*'s failure to offer even a single example of an actual problematic prosecution makes it an outlier.[12]

*Lo* perhaps thought it obviated any need to point to actual prosecutions when it concluded that "*everything* that Section 33.021(b) prohibits and punishes is speech and is either already prohibited by other statutes . . . or is constitutionally protected."[13] Even assuming we can consider the existence of other statutes in an overbreadth analysis,[14] *Lo*'s conclusion seems to be obviously wrong, especially in light of current Supreme Court precedent regarding the First Amendment and the protection of minors.[15] And the various hypotheticals *Lo* gave did not account for the statute's

---

analysis because the statute was in every case an impermissible content-based restriction. *See id.* at 349 & n. 143 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 n. 3 (1992)). Even so, in its overbreadth analysis, the Court at least looked to the "alarming breadth" of the statute, *and* it pointed to the facts of the case before it and to four prior appellate decisions to show the "real" improper reach of the statute. *Id.* at 350-52.

[12] *See supra* at nn.10 (citing *Johnson*), 11 (discussing *Thompson*); *infra* at n.14 (discussing *Perry*).

[13] *Lo*, 424 S.W.3d at 20 (emphasis in *Lo*, ellipsis inserted).

[14] In *Ex parte Perry,* this Court responded to the State pushing back against this type of analysis from *Lo* by raising a concern that, if all the so-called legitimate applications of the challenged statute are covered by other statutes, the challenged statute arguably does "no work." 483 S.W.3d 884, 913 (Tex. Crim. App. 2016). Nevertheless, the Court found that, "even if the State were correct as a general matter," the legitimate sweep of the statute at issue in *Perry* was "vanishingly small." *Id. Perry* also pointed to a number of common, concrete scenarios in which the statute would apply unconstitutionally, including to the action of the trial judge in threatening to quash the indictment in Perry's own case. *See id.* at 915-16. And *Perry* pointed to a prior prosecution in *State v. Hanson*, 793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.), and explained the absence of more prosecutions by the fact that the Legislature had amended the statute to prevent a repetition of what happened in *Hanson*, with the ruling sought by the State in *Perry* threatening to "reintroduce the very chilling effect that *Hanson* and earlier legislative action eliminated." *Perry*, 483 S.W.3d at 917.

[15] *See Free Speech Coalition v. Paxton*, 145 S. Ct. 2291, 2203-04 (2025) (discussing the State's interest in protecting children from sexually explicit content).

culpable mental state of "intent to arouse or gratify sexual desire."[16]  Such an intent will be absent if, for example, a teacher directs a student to a work of literature or art for legitimate educational purposes.  It is at least presumptively improper for an adult to communicate with a child with the intent to arouse or gratify sexual desire.[17]

## II.

This Court extensively addressed the nature of the overbreadth doctrine in *State v. Johnson*.[18]  Pointedly, if a statute violates the overbreadth doctrine, it is unconstitutional *on its face*.[19]  And the overbreadth doctrine is part of *substantive First Amendment law*.[20]  For these propositions, *Johnson* accurately cited Supreme Court precedent.[21]  A state court is not free to ignore the overbreadth doctrine, nor can it say that it is not always a federal constitutional doctrine.[22]  Even though

---

[16] *See Lo*, 424 S.W.3d at 20 (referring to the written works of "Lolita," "50 Shades of Grey," "Lady Chatterly's Lover," and Shakespeare's "Troilus and Cressida"; to acted out performances (on television, in movies, and other performances) of "The Tudors," "Rome," "Eyes Wide Shut," "Basic Instinct," Janet Jackson's "Wardrobe Malfunction" during the 2004 Super Bowl, and Miley Cyrus's 'twerking' during the 2013 MTV Video Music Awards; and to the art works of "The Rape of the Sabine Women," "Venus De Milo," and "the Naked Maja.").

[17] The improper-photography statute in *Thompson* contained this culpable mental state, but the statute was not directed at *children*, nor did the statute require that anyone receive the communication.  *See* 442 S.W.3d at 333, 350 (setting out the statute) ("This statute could easily be applied to an entertainment reporter who takes a photograph of an attractive celebrity on a public street.").

[18] 475 S.W.3d at 864-70.

[19] *Id.* at 864-65 (citing *United States v. Stevens*, 559 U.S. 460, 473 (2010); *Sabri v. United States*, 541 U.S. 600, 609-10 (2004)).

[20] *Id.* at 866 (citing and quoting *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 958-59 (1984); also citing *Sabri*, 541 U.S. at 610).

[21] *See supra* at nn.19, 20.

[22] *Johnson*, 475 S.W.3d at 866-68.

overbreadth is sometimes characterized as a "standing" doctrine, it is as much a part of First Amendment law as the concept of "reasonable expectation of privacy"—another "standing" type concept—is a part of Fourth Amendment law.[23]

The Presiding Judge recognizes that current Supreme Court authority is contrary to his position that the overbreadth doctrine should not apply to the States, but he argues that the Supreme Court should rethink its precedent. But the Supreme Court has recognized that the Fourteenth Amendment applies the First Amendment to the States in its entirety.[24] This flat out incorporation of the First Amendment by the Fourteenth Amendment affords no room to pick and choose what First Amendment doctrine to apply. And because overbreadth is a substantive part of the First Amendment and the First Amendment applies to the States, then overbreadth necessarily applies to the States. But even in *United States v. Hansen*, upon which the Presiding Judge and Judge Yeary rely, the Supreme Court said that the overbreadth doctrine was designed to safeguard the "marketplace of ideas."[25] I fail to see why a state should have more power to infringe on the marketplace of ideas than the federal government.

Judge Yeary claims that a statute found facially unconstitutional for overbreadth does not have the same status as a statute found facially unconstitutional for other reasons. But, as I explained earlier, once a statute has been found facially unconstitutional—regardless of the reason—it is

---

[23] *Id.* at 868.

[24] *Free Speech Coalition*, 145 S. Ct. at 2302 ("The First Amendment, which applies to the States through the Fourteenth Amendment, prohibits laws 'abridging the freedom of speech.'"); *Johnson*, 475 S.W.3d at 864 & n.10 ("The First Amendment right to freedom of speech applies to the states by virtue of the Fourteenth Amendment.") (citing *West Virginia Board of Educ. v. Barnette*, 319 U.S. 624, 638-39 (1943)).

[25] 599 U.S. at 770.

treated as "void from its inception," also known as being *void ab initio*.[26]  In a portion of his side opinion that commanded a majority of the Supreme Court in *Massachusetts v. Oakes*, Justice Scalia pushed back against the notion that an "overbroad" statute was not *void ab initio*, saying, "I have heard of a voidable contract, but never of a voidable law.  The notion is bizarre."[27]  In concluding that a court could not decide to decline to grant relief to a person prosecuted under an overbroad law because the law had been amended and would no longer be applied in the future, Justice Scalia said that "[t]he overbreadth doctrine serves to protect constitutionally legitimate speech not merely *ex post*, that is, after the offending statute is enacted, but also *ex ante*, that is, when the legislature is contemplating what sort of statute to enact."[28]  Moreover, Justice Scalia concluded that courts cannot use policy concerns to calibrate the effect of finding a law facially unconstitutional—the law is either facially invalid or it is not:

> In my view we have the power to adopt a rule of law which says that the defendant's acts were lawful because the statute that sought to prohibit them was overbroad and therefore invalid.  I do not think we have the power to pursue the policy underlying that rule of law more directly and precisely, saying that we will hold the defendant criminally liable or not, depending upon whether, by the time his last appeal is exhausted, letting him off would serve to eliminate any First Amendment "chill."  Even if one were of the view that some of the uses of the overbreadth doctrine have

---

[26] *Smith*,  463 S.W.3d at 896 (holding the statute invalidated by *Lo* to be *void ab initio*); *Ex parte E.H.*, 602 S.W.3d 486, 494 (Tex. 2020) ("The statute under which E.H. was arrested has been declared unconstitutional, the indictment against him has been dismissed, and the court order placing him in community supervision has been vacated. As a matter of law, the statute was void from its inception as if it had never been, and is to be considered no statute at all.") (ellipsis and internal quotation marks omitted).

[27] 491 U.S. 576, 588 (1989) (op. of Scalia, J., joined by Blackmun J., and joined as to part I by Brennan, Marshall, and Stevens, JJ.).

[28] *Id.* at 586.

been excessive, this would not be a legitimate manner in which to rein it in.[29]

As Judge Cochran eloquently said in her concurring opinion in *Chance*: "[A] person may always obtain relief from an indictment or a conviction based on a penal statute that has been previously declared unconstitutional. . . . The unconstitutional statute has disappeared in a puff of smoke. No one can be convicted for a non-existent crime and no prior conviction based upon that unconstitutional statute is valid."[30] Or, as Justice Scalia has said, "What a court does with regard to an unconstitutional law is simply to ignore it. It decides the case disregarding the unconstitutional law, because a law repugnant to the Constitution is void, and is as no law."[31]

### III.

When this Court declares a statute facially unconstitutional, that declaration has a specific legal consequence. And that legal consequence is to nullify the statute as if it had never existed. And there is no "overbreadth" exception to that principle—a statute is either facially constitutional or it is not. Consequently, even though I may want to overrule *Lo*, so long as *Lo* is binding precedent, the statute it invalidated is a dead letter. And if the statute is a dead letter, Applicant's conviction is supported by *nothing*. A habeas applicant can always attack his restraint by a conviction that is supported by nothing at all.

Under our precedent as it *currently exists*, we *must* grant relief. The *only* way we can deny relief is to overrule some aspect of our precedent that currently supports a grant. There is no

---

[29] *Id.* at 587.

[30] *Chance*, 439 S.W.3d at 919 (Cochran, J., concurring).

[31] *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) (capitalization added, internal quotation marks, brackets, and citation omitted).

majority to overrule *Lo*, nor is there a majority for either of the alternative legal theories for denying relief advocated by the Presiding Judge and Judge Yeary.  In fact, the opposite is true: majorities on this Court *oppose* all three articulated rationales for denying relief in this case.

I would file and set this case on whether *Lo* should be overruled, but a majority has declined to do so.  Under precedent as it now stands, Applicant is entitled to relief.  Consequently, though I dissent from the Court's refusal to file and set, I concur in its decision to grant relief.

Filed: October 23, 2025

Publish