# IN THE SUPREME COURT OF TEXAS

══════════

No. 18-0932

══════════

EX PARTE E.H.

══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

══════════════════════════════════════

**Argued January 29, 2020**

JUSTICE BOYD delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, JUSTICE BUSBY, and JUSTICE BLAND joined.

JUSTICE BLACKLOCK filed a dissenting opinion.

The Texas Department of Public Safety filed this restricted appeal from a trial-court order granting E.H.'s petition for expunction of arrest records under article 55.01 of the Code of Criminal Procedure. The court of appeals agreed with the trial court and dismissed the Department's appeal, holding that the lack of any error on the face of the record deprived the court of jurisdiction. We agree with both courts that E.H. qualifies for expunction, but we disagree with the court of appeals' conclusion that the facial-error requirement is jurisdictional. We therefore reverse the court of appeals' judgment and reinstate the trial court's judgment.

# I.
## Background

In August 2007, E.H. was indicted on two counts of felony online solicitation of a minor under former penal code section 33.021(b).[1] E.H. pleaded guilty to both counts in exchange for five years' deferred adjudication community supervision and a $2,000 fine. *See* TEX. CODE CRIM. PROC. art. 42A.101–.111 (addressing deferred adjudication community supervision). E.H. completed his community supervision in May 2013. Five months later, the Court of Criminal Appeals declared former section 33.021(b) facially unconstitutional because it prohibited constitutionally protected speech and was not narrowly drawn to impose the least restrictive means to achieve the government's compelling interest in protecting children from sexual abuse. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

After *Lo*, E.H. applied for a writ of habeas corpus seeking relief from the order that placed him on community supervision. *See* TEX. CODE CRIM. PROC. art. 11.072 (addressing procedure for habeas applications in community-supervision cases).[2] The trial court granted E.H.'s application,

---

[1] At the time, the code provided:

> A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally:
> > (1) communicates in a sexually explicit manner with a minor; or
> > (2) distributes sexually explicit material to a minor.

*See* Act of May 21, 2007, 80th Leg., R.S., ch. 610, § 2, 2007 Tex. Gen. Laws 1167, 1167–68 (current version at TEX. PENAL CODE § 33.021(b)).

[2] Others who were indicted under former section 33.021(b) have also sought habeas relief. *See, e.g.*, *Tex. Educ. Agency v. S.E.H.*, 571 S.W.3d 372, 373 (Tex. App.—Houston [1st Dist.] 2018, pet. pending); *Ex parte C.D.*, No. 12-17-00309-CV, 2018 WL 3569838, at *1 (Tex. App. —Tyler July 25, 2018, pet. pending) (mem. op.); *Ex parte J.H.*, No. 02-17-003338-CV, 2018 WL 4024757, at *1 (Tex. App.—Fort Worth Aug. 23, 2018, pet. pending) (mem. op.).

dismissed the indictment against him, and declared the community-supervision order void. E.H. then filed a petition for expunction, which the court granted.

Nearly six months after the court granted expunction, the Department filed this restricted appeal arguing that E.H. does not qualify for expunction because the criminal court had entered an order placing him on deferred adjudication community supervision. *Ex parte E.H.*, 582 S.W.3d 445, 446–47 (Tex. App.—Fort Worth 2018). The court of appeals disagreed, holding that E.H. is entitled to expunction because the statute under which he was indicted and the indictment itself were void and the community-supervision conditions imposed on him "disappeared as a result of the trial court's grant of habeas corpus relief." *Id.* at 453–54. Finding no error apparent on the face of the record, the court dismissed the Department's restricted appeal for want of jurisdiction. *Id.* at 454. We granted the Department's petition for review.

## II.
### Expunction

We agree with the trial court and the court of appeals that E.H. established his eligibility for expunction of his arrest records. An expunction order requires governmental agencies to return, remove, delete, or destroy all records of a person's arrest and generally permits the person to deny the occurrence of the arrest and the existence of the expunction order. *See* TEX. CODE CRIM. PROC. art. 55.02–.03. Although the expunction statute appears within the code of criminal procedure, an expunction proceeding is civil in nature. *State v. T.S.N.*, 547 S.W.3d 617, 619 (Tex. 2018). Because expunction is a statutory privilege and not a constitutional or common law right, *In re State Bar of Tex.*, 440 S.W.3d 621, 624 (Tex. 2014), courts must enforce the statutory requirements and "cannot add equitable or practical exceptions . . . that the legislature did not see fit to enact," *In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 (Tex. 2019). We review a trial court's ruling on an expunction

3

petition under an abuse-of-discretion standard. But to the extent the ruling depends on a question of law, we review it de novo because a "trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

At the time of E.H.'s expunction hearing in 2017, article 55.01(a)(2) provided that a person who is arrested but not tried for an offense[3] is entitled to an expunction order if

> (1) "the person has been released";
> (2) "the charge, if any, has not resulted in a final conviction and is no longer pending"; and
> (3) "there was no court-ordered community supervision under Chapter 42A for the offense, unless the offense is a Class C misdemeanor";

"provided that"

> (4) the indictment or information charging the person with the offense either
>   a. was not timely presented within particular deadlines following the arrest, or
>   b. was timely presented but was dismissed or quashed for particular reasons, including that it "was void"; or
> (5) "prosecution of the person for the offense for which the person was arrested is no longer possible because the limitations period has expired."

Act of May 29, 2015, 85th Leg., R.S., ch. 770, § 2.23, 2015 Tex. Gen. Laws 2321, 2373 (amended 2017, 2019) (current version at TEX. CODE CRIM. PROC. art. 55.01(a)(2)).[4]

The Department argues that E.H. cannot satisfy the statute's third requirement—that "there was no court-ordered community supervision under Chapter 42A for the offense"—because the criminal court had, in fact, ordered E.H. to community supervision. E.H. does not dispute that the criminal court entered an order placing him on community supervision under chapter 42A for the

---

[3] A person who is tried for the offense is generally entitled to expunction if the person was acquitted or, if convicted, was subsequently pardoned "or otherwise granted relief on the basis of actual innocence with respect to that offense." TEX. CODE CRIM. PROC. art. 55.01(a)(1); *see T.S.N.*, 547 S.W.3d at 622 ("Under (a)(1), the acquittal or pardon is the only prerequisite to expunction.").

[4] The legislature has amended the expunction statute numerous times. The Department argues that the trial court and court of appeals applied the incorrect version of the statute, but it concedes that the substantive requirements have not changed and the particular applicable version does not alter our analysis.

offense, but he argues that order was void from the time it was entered because the statute under which he was indicted was unconstitutional. The Department does not dispute that the order was void, but argues that, nevertheless, as a matter of historical fact, "there was court-ordered community supervision" for E.H.'s offense. *See Ex parte Fournier*, 473 S.W.3d 789, 793 (Tex. Crim. App. 2015) (holding that persons convicted under former section 33.021(b) could not establish "actual innocence" because the "conduct on which the criminal prosecution was based still exists as a matter of historical fact").[5] We must decide whether the historical reality that a court ordered E.H. to community supervision disqualifies him for expunction when, as a legal reality, that order was a nullity from inception.[6]

The Department offers several arguments in support of its proposed construction. It notes that to obtain habeas relief from a community-supervision order, as E.H. did here, the applicant "must be, or have been, on community supervision." TEX. CODE CRIM. PROC. art. 11.072 § 2(b). By requesting and obtaining habeas relief, the Department reasons, E.H. conceded that he had been on community supervision and thus that "there was court-ordered community supervision for his offense." E.H. concedes that he had been on community supervision, but the very purpose of his request for habeas relief under article 11.072 was to challenge the legal validity of the order that

---

[5] In another case decided today, we address the issue the Court of Criminal Appeals addressed in *Fournier*: whether a person who was convicted under former section 33.021(b) was later granted habeas relief on the ground that he was "actually innocent." *See In re Lester*, – S.W.3d – (Tex. 2020). Here, the issue is not whether E.H. was actually innocent, but whether "there was no court-ordered community supervision under Chapter 42A" for his offense.

[6] The dissent believes that "whether a court order was valid or constitutional has nothing to do with whether it was ordered by a court" because "all court orders are 'court-ordered,' both the valid and the invalid." *Post* at __. But the court order sentencing E.H. to community supervision was null and void because the underlying criminal statute was void *ab initio*. Because the law treats unconstitutional statutes and all proceedings thereunder as if they never existed, there was no court-ordered community supervision as a matter of law.

placed him there. *See id.* (noting that the habeas application "must challenge the legal validity" of the conviction, the order imposing community supervision, or the conditions of community supervision). Article 11.072, in other words, requires the historical reality of community supervision as a basis for challenging the legal validity of the order that imposed it. But unlike article 11.072, he argues, the expunction statute ties the legal reality to the historical reality by requiring that "there was no *court-ordered* community supervision." *Id.* art. 55.01(a)(2) (emphasis added). We agree with E.H. that article 11.072 does not support the Department's proposed construction of article 55.01(a)(2).

The Department also notes that the expunction statute does not expressly except community-supervision orders that are based on offenses charged under an unconstitutional statute or are otherwise null and void. Instead, it turns simply on whether "there was" court-ordered community supervision. *Id.* Citing numerous other Texas statutes,[7] the Department argues that the

[7] *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 74.106(a)(2) (stating that a health care provider's failure to disclose risks may not be negligent if "there was an emergency"), 82.005(a)(1) (requiring product-liability plaintiff to prove "there was a safer alternative design"), 171.088(a)(4) (requiring court to vacate arbitration award if "there was no agreement to arbitrate"); Tex. Code Crim. Proc. arts. 11.24 (entitling person to habeas relief if petition states "there was no sufficient cause for requiring bail"), 18.13 (requiring magistrate to discharge defendant if magistrate is not satisfied "that there was good ground for the issuance of the warrant"), 18A.358(c)(1) (requiring suppression motion be made before hearing unless "there was not an opportunity to make the motion"), 42.01 § 1(12) (requiring judgment to reflect county where prosecution originated if "there was a change of venue"); Tex. Educ. Code § 51.236(a) (requiring finding that "there was reasonable cause to believe that the person has willfully disrupted the orderly operation of the campus or facility"); Tex. Est. Code §§ 306.002(a)(2)(B)(iii) (requiring court to grant estate administration if "there was no good cause" for executor's failure to timely present will for probate), 405.005(2) (permitting executor's closing report verifying that "there was property remaining on hand after payment of debts"); Tex. Fam. Code §§ 2.302(1) (providing that marriage's validity is not affected by officiant's lack of authority if "there was a reasonable appearance of authority"), 58.0052(b-3)(4) (referring to investigation concluding that "there was a reason to believe that abuse or neglect occurred"), 155.004(a)(3) (providing that court loses jurisdiction if another court incorrectly understood that "there was no court of continuing, exclusive jurisdiction"), 262.105(b)(1)(A) (requiring evidence that "there was an immediate danger to the physical health or safety of the child"), (2)(B) (requiring evidence that "there was not time . . . for a full adversary hearing"), .201(g)(1) (requiring court to find that "there was a danger to the physical health or safety of the child"), 264.5032(a)(3) (referring to investigation concluding that "there was reason to believe that abuse or neglect occurred"); Tex. Gov't Code §§ 531.993(c) (requiring ombudsman's report to determine whether "there was wrongdoing or negligence"), 2001.175(c) (permitting court to

phrase "there was" necessarily refers to factual as opposed to legal realities. But some of those statutes appear to disprove the Department's point. For example, one statute requires courts to vacate an arbitration award if "there was no agreement to arbitrate." TEX. CIV. PRAC. & REM. CODE § 171.088(a)(4). A second entitles a person to habeas relief if the person's petition states that "there was no sufficient cause for requiring bail." TEX. CODE CRIM. PROC. art. 11.24. And a third enables a person to avoid suspension of the person's driver's license by showing that "there was a motor vehicle liability insurance policy covering the motor vehicle." TEX. TRANSP. CODE § 601.333(a)(1). Although we need not and do not decide the issues here, we could certainly question the Department's assumption that these statutes would be satisfied even if the "agreement to arbitrate" was illegal or otherwise void, the petition challenging sufficient cause for bail had been stricken on legal grounds, or the liability insurance policy was for some reason legally invalid and unenforceable.[8] In any event, it is one thing to require that "there was" something that may be completely factual in nature, such as "an emergency," "good cause," or "an error in payment," but

---

allow additional evidence if "there were good reasons for the failure to present" the evidence earlier); TEX. HEALTH & SAFETY CODE §§ 81.050(g) (permitting court to assess costs if "there was not reasonable cause" for request to order testing), 171.006(a)(1)(D)(ii) (requiring physician to report if "there was "insufficient time to obtain consent"); TEX. HUM. RES. CODE § 44.003(c)(2) (requiring contractor to substantiate that "there were sufficient preparations in the development of the services offered"); TEX. INS. CODE §§ 34.002(d) (defining "substantially justified" to mean "there was a reasonable basis in law or fact"), 843.3385(e) (permitting HMO to recover overpayment if it determines "that there was an error in payment of the claim"), 1106.002(a)(2) (permitting reinstatement of insurance policy if "there was not a default in the payment of premiums"), 1111A.004(a)(1) (permitting commissioner to revoke license if "there was a material misrepresentation in the application for the license"), 4002.008(d) (requiring report to indicate whether "there was any disparity" in examination pass rate); TEX. LAB. CODE § 407A.404(b)(2) (permitting revocation of approval if "there was a material misrepresentation" in application); TEX. TRANSP. CODE § 601.333(a)(1) (permitting driver whose license was suspended to provide evidence that "there was a motor vehicle liability insurance policy covering the motor vehicle").

[8] *See, e.g.*, *Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 242 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that section 171.088(a)(4) applies when arbitration agreement existed but party seeking to vacate arbitration award argued he did not enter into agreement in his individual capacity); *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 368 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that section 171.088(a)(4) would apply when party seeking to vacate arbitration award challenges legality of arbitration agreement, although not when it challenges legality of entire contract).

7

quite another to require that "there was" something "court-ordered," which necessarily raises both factual and legal implications. In short, we cannot agree with the Department that the phrase "there was" necessarily refers solely to a factual reality regardless of the legal reality of that fact.

The Department also argues that the statute's structure confirms the Department's proposed construction. As noted, a person cannot obtain expunction under article 55.01(a)(2) simply by making the initial showing that (1) the person has been released; (2) the charge, if any, has not resulted in a final conviction and is no longer pending; and (3) there was no court-ordered community supervision under Chapter 42A for the offense. Instead, a person who makes that initial showing is entitled to expunction "*provided that*" the person also shows that the indictment or information either was not timely presented or, if presented, "was dismissed or quashed" for one of several reasons, including that "the indictment or information was void." TEX. CODE CRIM. PROC. art. 55.01(a)(2)(A)(i)–(ii) (emphasis added). As the Department explains, the requirement "that the indictment or information was void" is separate and independent from the requirement that "there was no court-ordered community supervision," and the person seeking expunction must show both. According to the Department, the requirement that "there was no court-ordered community supervision" would be meaningless and superfluous if it did not include legally invalid court orders because a showing that the indictment or information was void necessarily also shows that "there was no [legally valid] court-ordered community supervision." So, the Department contends, to give meaning to both requirements we must construe the statute to require that "there was no court-ordered community supervision" regardless of whether the court order was valid or void.

8

We agree with the Department that when a court orders community supervision based on a void indictment, the community-supervision order is itself necessarily also void. So under E.H.'s and the court of appeals' construction, a person who seeks expunction under article 55.02(a)(2) on the ground that the indictment was void will necessarily also establish that "there was no court-ordered community supervision." But we do not agree that this construction renders either requirement wholly superfluous. The statute permits a person who makes the initial showing to obtain expunction on several grounds other than that the indictment or information was void, including that (1) the indictment or information was not timely presented, (2) the person completed a veterans treatment court program, a mental health court program, or a pretrial intervention program, (3) the indictment was presented "because of mistake, false information, or other similar reason indicating absence of probable cause at the time of the dismissal to believe the person committed the offense," or (4) "prosecution of the person for the offense for which the person was arrested is no longer possible because the limitations period has expired." *Id.* art. 55.01(a)(2)(d) & (e). Under E.H.'s and the court of appeals' construction, a person who seeks expunction on any of these grounds must still show that "there was no court-ordered community supervision," and may do so by showing that the order was void for some reason other than that the indictment itself was void.

The Department's construction, by contrast, renders the phrase "court-ordered" superfluous in all circumstances. Under the Department's approach, the statute requires only that "there was no . . . community supervision under Chapter 42A," deleting the phrase "court-ordered" as if it meant nothing at all. Yet under Chapter 42A, community supervision is "the placement of a defendant *by a court* under a continuum of programs and sanctions, with conditions imposed *by*

9

*the court* for a specified period." *Id.* art. 42A.001(1) (emphases added). By definition, community supervision under Chapter 42A must be court-ordered. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired.") (citing TEX. GOV'T CODE § 311.011(b)). E.H. contends that "for something to be court ordered, there must be a valid court order," and in the absence of a valid community-supervision order, "there was no court-ordered community supervision."

We agree. Article 55.01(a)(2) required E.H. to show not just that "there was no community supervision," but that "there was no *court-ordered* community supervision under Chapter 42A *for the offense*." TEX. CODE CRIM. PROC. art. 55.01(a)(2) (emphases added). Giving effect as we must to all of the statute's words, we read the statute to require a showing not just that E.H. did not serve under community supervision, but that no court order placed E.H. in community supervision for committing a criminal offense.[9] By including the references to a court order and an offense, the statute necessarily incorporates legal realities as well as historical facts.

As the Department itself agrees, those legal realities do not exist in E.H.'s case. The statute under which E.H. was arrested has been declared unconstitutional, the indictment against him has

---

[9] The dissent argues that "community supervision" and "court-ordered community supervision" mean the "exact same thing." *Post* at __. That statement of course is true (as explained, all community supervision must be court-ordered), but its truth begs the question of why the legislature would expressly refer to "court-ordered" community supervision when it could have referred only to community supervision. We cannot just write off the legislature's chosen language as "linguistic redundancy." *Post* at __. As the dissent highlights, and as our opinion thoroughly explains, "we presume the Legislature says what it means and means what it says." *Post* at __ (citing *Cadena Comercial USA Corp. v. Tex. Alcoholic Bev. Comm'n*, 518 S.W.3d 318, 337 (Tex. 2017)). Because the statute expressly refers to "court-ordered" community supervision, we must give that language meaning, as we do here by requiring that the court order be valid and effective.

been dismissed, and the court order placing him in community supervision has been vacated. As a matter of law, the statute was "'void from its inception . . . as if it had never been,'" and "is to be considered no statute at all." *Smith v. State*, 463 S.W.3d 890, 895 (Tex. Crim. App. 2015) (quoting *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1998)). In the absence of the statute, no "offense" ever occurred.[10] *See Offense*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A violation of the law; a crime . . . ."). And like the statute, both the indictment and the court order imposing community supervision were void *ab initio* and as a legal reality, never existed at all. *See Fournier*, 473 S.W.3d at 790 (setting aside judgments in light of *Lo*); *Ex parte Chance*, 439 S.W.3d 918, 918(Tex. Crim. App. 2014) (per curiam) (same); *Lo*, 424 S.W.3d at 27 ("We remand the case to the trial court to dismiss the indictment."); *Nix v. State*, 65 S.W.3d 664, 667–68 (Tex. Crim. App. 2001) (explaining that a "trial court's judgment is accorded no respect" if the court lacked power to render it because it is a "void judgment" and a "'nullity'") (quoting *Ex parte Patterson*, 969 S.W.2d 16, 19 (Tex. Crim. App. 1998)); *Reyes*, 753 S.W.2d at 383 ("An unconstitutional statute is void from its inception and cannot provide a basis for any right or relief."); *Sharber v. Florence*, 115 S.W.2d 604, 607 (Tex. 1938) ("The general rule is that a void statute is no law, and therefore cannot confer any rights, bestows no power on any one, and justifies no acts performed under it.") (citations omitted); *see also Vacate,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("To nullify or cancel; make void; invalidate . . . ."). As the United States Supreme Court explained long ago, an

---

[10] The dissent quotes our previous explanation that "when a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it" to support its argument that the statute should not be treated as void *ab initio*. *Post* at __ (quoting *Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017)). But the dissent ignores the context of this quote— the full footnote merely explains that the petitioners had standing to seek judicial review because the laws were still in the books. We do not deny that laws declared unconstitutional by a court remain in the books until repealed by the legislature. Indeed, written laws do not simply vanish from existence once declared unconstitutional. But an unconstitutional law that is *factually* still in the books is nevertheless *legally* unenforceable as if it never existed at all.

11

"unconstitutional law is void, and is no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void." *Ex parte Siebold*, 100 U.S. 371, 376 (1880).

We conclude that the trial court did not err by granting E.H.'s petition for expunction because, as a matter of law, "there was no court-ordered community supervision under Chapter 42A for the offense" for which he was arrested.

### III.
### Restricted Appeal

Having reached the same conclusion, the court of appeals dismissed the Department's restricted appeal, holding that lack of error on the face of the record deprived the court of jurisdiction. 582 S.W.3d at 448. We do not agree.

An agency protesting an expunction order "may appeal the court's decision in the same manner as in other civil cases." TEX. CODE CRIM. PROC. 55.02, § 3(a). Generally, a party who desires to appeal a trial court judgment must file a notice of appeal within thirty days after the judgment is signed. TEX. R. APP. P. 26.1. A timely filed motion for new trial, motion to modify the judgment, motion to reinstate, or a proper request for findings of fact and conclusions of law extends the deadline to ninety days after the judgment is signed. TEX. R. APP. P. 26.1(a). But if the party "did not participate—either in person or through counsel—in the hearing that resulted in the judgment complained of" and did not timely file a post-judgment motion, request for findings of fact and conclusions of law, or file a notice of appeal within ninety days, the party may pursue a restricted appeal by filing a notice of appeal within six months after the judgment or order is signed. TEX. R. APP. P. 30. A notice of restricted appeal must state that these requirements are met. TEX. R. APP. P. 25.1(d)(7).

12

Restricted appeals under rule 30 replaced the former writ-of-error practice. TEX. R. APP. P. 30 cmt.; *see Alexander v. Lynda's Boutique,* 134 S.W.3d 845, 849 (Tex. 2004) ("The writ of error procedure is now the restricted appeal procedure in Texas Rules of Appellate Procedure 25.1, 26.1(c), and 30."). Review by restricted appeal affords an appellant the same scope of review as an ordinary appeal. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam) (discussing writ-of-error review). To "sustain" a restricted appeal, the filing party must show that:

> (1) he filed notice of the restricted appeal within six months after the judgment was signed;
> (2) he was a party to the underlying lawsuit;
> (3) he did not participate in the hearing that resulted in the judgment complained of, and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law; and
> (4) error is apparent on the face of the record.

*Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (per curiam).

The fourth requirement derives from case law and is not included within the rule's requirements. *See Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 943 (Tex. 1991) (citing *Brown v. McLennan Cty. Children's Protective Servs.,* 627 S.W.2d 390, 392 (Tex. 1982), as authority for fourth requirement). Its history is murky, but it generally derived from both English and Spanish appellate practices. *See Sequin v. Maverick*, 24 Tex. 526, 533–35 (1859) (explaining the error must appear on the face of the decree or pleadings and that the "evidence at large[] cannot be 'gone into'"); *see also Texaco, Inc. v. Cent. Power & Light Co.*, 925 S.W.2d 586, 588–89 (Tex. 1996) (discussing history of "anachronistic" writ-of-error practice).

We have specifically recognized that the first requirement (that the party timely file a notice of appeal within six months) and the third (that the party did not participate in the hearing) are

jurisdictional. *Pike-Grant*, 447 S.W.3d at 887 (Tex. 2014) (treating no-participation requirement as jurisdictional); *Quaestor Invs., Inc. v. State of Chiapas*, 997 S.W.2d 226, 227 (Tex. 1999) ("The six-month time limit is mandatory and jurisdictional."); *Texaco*, 925 S.W.2d at 588 (treating no-participation requirement as jurisdictional). But we have been less clear about the fourth requirement. We have suggested in some cases that all four requirements are jurisdictional, broadly stating that a restricted appeal is "available" only if all four are met, *Gold v. Gold*, 145 S.W.3d 212, 213 (Tex. 2004) (per curiam), and that all four are "necessary for review by writ of error," *Quaestor*, 997 S.W.2d at 227; *see also Stubbs v. Stubbs*, 685 S.W.2d 643, 644 (Tex. 1985); *Brown*, 627 S.W.2d at 392. In other cases, however, we have stated that the four requirements are necessary to "sustain" or "prevail on" a restricted appeal, suggesting that the requirements ultimately involve the appeals' merits, as opposed to the court's jurisdiction. *See Pike-Grant*, 447 S.W.3d at 886 (stating requirements are necessary to "sustain" a restricted appeal); *Ins. Co. of State of Penn. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (per curiam) (stating requirements are necessary to "prevail" on restricted appeal); *Alexander,* 134 S.W.3d at 848 (listing elements required to "prevail" on a restricted appeal); *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam) ("In order to be entitled to reversal by writ of error, a party who did not participate at trial has six months in which to show error on the face of the record.").

By contrast, several courts of appeals have expressly stated that all four requirements are "mandatory and jurisdictional." *See, e.g.*, *Osteen v. Osteen*, 38 S.W.3d 809, 812 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("Each element is mandatory and jurisdictional and cannot be waived.") (citing *C & V. Club v. Gonzalez*, 953 S.W.2d 755, 757 (Tex. App.—Corpus Christi 1997, no pet.)); *Serna v. Webster*, 908 S.W.2d 487, 491 (Tex. App.—San Antonio 1995, no writ)

("Each of these elements is mandatory and jurisdictional.") (citing *Robertson v. Hide–A–Way Lake Club, Inc.*, 856 S.W.2d 841, 843 (Tex. App.—Tyler 1993, no writ) ("Each of the four requisites of an appeal by writ of error are mandatory and jurisdictional.")). These decisions ultimately rely, however, on court of appeals decisions that held only that the no-participation requirement is jurisdictional. *See Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing Sys., Inc.*, 784 S.W.2d 122, 124 (Tex. App.—Austin 1990, writ denied)) (holding only that the no-participation requirement "is mandatory, jurisdictional, and cannot be waived.") (citing *Nutter v. Phares*, 523 S.W.2d 292, 293 (Tex. Civ. App.—Beaumont 1975, writ ref'd n.r.e.) (stating that no-participation requirement is "mandatory, jurisdictional and cannot be waived")).

Despite our mixed messages regarding the four requirements as a whole, we have pretty clearly suggested in several cases that the fourth requirement—that error be apparent on the face of the record—goes to the merits of the appeal and is not jurisdictional. *See, e.g.*, *Sweed v. Nye*, 323 S.W.3d 873, 875 (Tex. 2010) (per curiam) ( "We do not agree that the merits of Sweed's case are a consideration in determining whether he procedurally invoked the court of appeals' jurisdiction."); *Ginn v. Forrester*, 282 S.W.3d 430, 433 (Tex. 2009) (per curiam) (stating that a record that is "silent" on the asserted error is "insufficient to *establish reversible error* in a restricted appeal") (emphasis added); *Brown*, 627 S.W.2d at 392 ("The question first confronted is not whether Brown can obtain review by writ of error, but whether, assuming such review, there were any grounds before the court of civil appeals warranting reversal of the trial court's judgment.").

We confirm today that the error-on-the-face-of-the-record requirement is not jurisdictional. The task of determining error on the face of the record ultimately requires an analysis of the merits

of the appellant's grounds for appeal. Generally, at least, courts should avoid inquiring into the merits of an appeal when deciding whether the appellant "procedurally invoked the court of appeals' jurisdiction." *Sweed*, 323 S.W.3d at 875; *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (explaining that courts must generally determine their jurisdiction before addressing "the merits of any case"). A party is "entitled to proper application of the appellate rules regardless of the merits of his underlying case." *Sweed*, 323 S.W.3d at 875.

We hold that although the first three requirements for a restricted appeal are jurisdictional, the fourth is not. An appellant who satisfies the first three requirements establishes the court's jurisdiction and must then establish error from the face of the record to prevail in the restricted appeal. *See Texaco*, 925 S.W.2d at 591 (rejecting finding that appellant participated in the hearing, reversing jurisdictional dismissal, and remanding for consideration of the merits). Here, the Department satisfied the three jurisdictional requirements but failed to demonstrate error on the face of the record. Because that requirement is not jurisdictional, the court of appeals should have affirmed the trial court's judgment instead of dismissing the case for want of jurisdiction.

## IV.
### Conclusion

We hold that "there was no court-ordered community supervision under Chapter 42A for the offense" in E.H.'s case because the court order placing him on community supervision was void from its inception. Because the Department does not challenge E.H.'s petition for expunction on any other ground, the trial court correctly held that E.H. is entitled to have records and files relating to the arrest expunged. The Department's failure to show error on the face of the record, however, did not deprive the court of appeals of jurisdiction over this restricted appeal. We reverse

the court of appeals' judgment dismissing the Department's appeal for want of jurisdiction and reinstate the trial court's judgment.

                             _____

                             Jeffrey S. Boyd
                             Justice

Opinion delivered: May 15, 2020